(88 App. Div. 575.)

### SNOW MELTING CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 11, 1903.)

1. MUNICIPAL CORPORATIONS — STREET CLEANING — CONTRACTS — OFFER AND ACCEPTANCE.

Where, after certain negotiations between C., plaintiff's vice president, who was authorized to solicit business for plaintiff, and the city street cleaning department, with reference to the removal of snow by plaintiff, the commissioner of street cleaning directed C. to put his offer in writing, whereupon he addressed a letter to the department, offering to remove snow from such sections of the city as might be designated by the department at a certain price per cubic yard, the allowance for shrinkage to be decided by the department, the latter was entitled to treat the letter as an offer, the acceptance of which would constitute a contract binding on the parties.

2. SAME—GOOD FAITH.

Where, prior to the making of a contract for the removal of snow between plaintiff and the New York City street cleaning department, the commissioner notified plaintiff's vice president that 70 per cent. would be deducted for shrinkage, and it appeared that such shrinkage had been determined by previous experience in a park and in streets not

used to the extent the streets subsequently cleaned by plaintiff were used, a referee's finding that such deduction was unreasonable and unfair when limited to a contract for the cleaning of a limited area after a single storm was erroneous.

Appeal from Judgment on Report of Referee.

Action by the Snow Melting Company against the city of New York. From a judgment on a referee's report in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Chase Mellen, for appellant.
A. S. Gilbert, for respondent.

INGRAHAM, J. This action was to recover from the city of New York the amount due under a special contract for cleaning certain streets in the city of New York of snow during the winter of 1902. There are 10 separate causes of action, by each of which the plaintiff seeks to recover for services rendered under a special order by the commissioner of street cleaning of the alleged aggregate value of $5,317.95, of which there has been paid $2,245.78, leaving a balance of $3,072.17. The allegation as to the employment of the plaintiff in each of the causes of action is substantially the same, and is as follows: "That, pursuant to the power and authority vested in the said commissioner of street cleaning pursuant to the terms of the charter of the city of New York [Laws 1897, c. 378], he did hire, employ, and engage this plaintiff, its machines, horses, carts, and workmen, to remove the snow and ice from the said Astor Place and Eighth street, east side of Bowery, and on Fourth avenue south of Ninth street, and west side of Bowery, north of Fourth street, borough of Manhattan, city of New York"; that "reasonable value and the agreed price of the services so rendered by this plaintiff, as aforesaid, to this defendant and to the said commissioner of street cleaning of the city of New York on said 25th day of February, 1902, and the fair and reasonable value of the use of said machines, horses, carts, and workmen, was the sum" specified. The answer admits the employment, and denies the allegation that the reasonable value and agreed price of the services rendered by the plaintiff was the amount named, or that the defendant agreed to pay to the plaintiff the fair and reasonable value for the use of the machines, horses, carts, and workmen, or to pay for the same in any manner except as more specifically alleged; and then alleges as a defense to the several causes of action that the commissioner of street cleaning hired, engaged, and employed the plaintiff to remove the snow which lay in the streets of the city of New York referred to in the complaint, and that it was agreed between the parties that the area from which the snow was to be removed should be determined by actual measurement; that the snow fall as reported by the United States Weather Bureau, taken in connection with the area, less 70 per cent. to be deducted for shrinkage, should be the basis of the computation by which the amount of

compensation at the rate of 36¾ cents per cubic yard for work done should be determined; that in accordance with said agreement the plaintiff removed snow on the dates specified in the answer; and that the amount due for the snow removed by the plaintiff at the agreed price was the sum of $2,513.69, of which the defendant has paid to the plaintiff the sum of $2,245.78, leaving due the plaintiff the sum of $267.91, and no more; and the answer admits that the defendant owes the plaintiff that sum.

The action was referred. The referee reported that the plaintiff was entitled to the sum of $2,924.68, with interest; that the commissioner of street cleaning employed the plaintiff to remove the snow and ice from certain public streets in the city of New York at the price of 36¾ cents per cubic yard, and pursuant to said employment the plaintiff removed 14,072 cubic yards of snow and ice from certain public streets and highways in said city of New York, which, at the agreed price of 36¾ cents per cubic yard, amounted to the sum of $5,170.46, on account of which the defendant has paid the plaintiff the sum of $2,245.78, leaving due the sum of $2,924.68; for which sum judgment was awarded against the defendant.

The employment of the plaintiff and the price being conceded, the only question at issue was as to the number of cubic yards of snow and ice that the plaintiff removed and for which it was entitled to be paid. The plaintiff based its right to recover upon the number of square yards of the street cleaned, multiplied by the depth of snow that fell, as testified by the officer from the weather bureau, making an allowance for shrinkage, based upon the testimony of Mr. Emory, an officer of the weather bureau. The allowance for shrinkage was the difference in the amount of snow on the ground on the day that the snow fell and that remaining on the night of the day following. Mr. Emory testified that it started to snow at 11:45 p. m. on the night of February 16th, and it stopped falling at 8:59 p. m. of the 17th; that 9.3 inches of snow fell; that that was the amount of snow on the ground when the snow stopped; that he made an observation on the 18th of February at 8 p. m., as to how much snow there remained of what had fallen; that there was remaining on the 18th of February at 8 p. m. 8 inches; and the calculation of the plaintiff was based upon the amount of snow that remained at 8 p. m. on the 18th of February, multiplied by the number of square yards of street cleaned. The position taken by the defendant was that these orders were given in pursuance of an offer made by the plaintiff to the defendant to remove the snow upon certain terms contained in a letter written to the street cleaning department on the 6th day of February, 1901. This letter, introduced in evidence by the defendant, was addressed to the commissioner of street cleaning, and was as follows:

"We desire to undertake a contract to remove snow from such section on the long-haul districts as might be designated by the street cleaning department at 36¾ per cu. yd. Quantity removed to be estimated by the snow fall as given by U. S. Weather Bureau, and taken in connection with the area cleaned. The allowance of shrinkage to be decided by your department. We are prepared to undertake this work following any snowfall that may occur during this year.     [Signed]     Snow Melting Co.  F. H. Cowles."

This letter seems to have been received by the department about the day of its date, and on the 16th or 17th of February the first order was given to the plaintiff over the telephone by Mr. Clarke, who was the snow inspector in the department. It was then snowing, and a message from Clarke to the plaintiff's president asked why the plaintiffs were not at work. The president answered that they had no order to do any work, whereupon Clarke said that he wanted the plaintiff to go ahead at once. The plaintiff then asked him what price the city would pay for it, and he said in reply that he would pay the contract price, 36¾ cents per yard. The president of the plaintiff, who received this message, swore that he had no knowledge at that time of this letter of February 6, 1902; that the letter was written by Cowles, who was the plaintiff's representative in the matter, and authorized to solicit business for the company from the department. Cowles testified that he was connected with the plaintiff, and was the vice president of the company; that at the time he saw Mr. Clarke, a few days prior to the writing of this letter of February 6th, Mr. Clarke told him that the department would deduct 70 per cent. as the gross shrinkage in the amount of snow removed; that they found that there had been a deduction of 70 or 75 per cent. in some of their past experience. Cowles further testified that he had several interviews with the commissioner; that they had a test of the plaintiff's machine for melting snow, which seems to have satisfied the commissioner; and that after that test he wrote that letter, as he calls it, "on my own spur, of my own desire to do work, and I reiterated that we would be glad to do the work, and that is why the letter was written." Cowles also testified that the question of the shrinkage to be allowed for was brought up by Mr. Clarke's talking about some test the department had made on Fifty-Ninth street, and he had said that by making certain calculations with the snow that fell and the snow that was removed they arrived at 75 per cent., and that "I just listened, and made no remarks or comments"; that the witness could not state positively the date of this, but believed it was before the letter (Exhibit 1) was written. The commissioner testified that the letter of December 6th was a prerequisite to any order given to the plaintiff; that Cowles, the vice president of the plaintiff, and the man who had charge of the matter, made a proposition to the department about using these snow machines, and the commissioner told him to put that in writing; that the letter of February 6th states the proposition; that in consequence of that requirement no agreement had been made with the plaintiff, or anybody on its behalf, before that letter, and it was upon that letter that the commissioner gave the order of the 16th or 17th of February; that in the conversation in relation to a contract between the plaintiff and the commissioner the commissioner said that in any contract that was made he would personally decide the shrinkage, and that Cowles after that statement said that the commissioner should decide that, and that it was in consequence of that conversation with Cowles that the letter of February 6th was written; that the estimate of allowance of 70 per cent. for shrinkage was based upon the experience of the street cleaning department of the city

of New York for 18 years, and was determined by taking the amount of snow that fell and the amount of snow which would be removed when the street had been cleaned; that when a street was cleaned after a fall of snow there would be an average shrinkage of 75 per cent. between the amount of snow that fell and the amount that was removed, and that it was based upon this experience that the commissioner determined that the amount of shrinkage was 70 per cent.

The referee held that this letter in question was not intended to be a binding contract, but merely a tender to be put in proper shape and form, if agreeable to the commissioner, as the basis of a general contract for the removal of snow for a term in a large section of the city; and that the determination by the commissioner was arbitrary and unfair, and not based upon proper facts. We are not able to agree with the learned referee as to either proposition. It is not disputed by the plaintiff but that Cowles, the writer of this letter, had charge of this matter on behalf of his company, and that on behalf of the company, with the authority of its officers, he entered into negotiations with the commissioner. It was said that he was not authorized to make a contract; but he was a vice president of the company, authorized to negotiate with the commissioner, and certainly he had authority to make a proposition to them upon which a contract should be based. He was informed that the amount of shrinkage based upon the records of the department was 70 or 75 per cent. of the amount of snow that fell, and with that knowledge he wrote and delivered a letter which expressly authorized the commissioner to determine the amount of shrinkage. That the commissioner required that such a letter should be written as a prerequisite to any order given is testified to by him, and is not disputed. That letter was certainly an offer of the plaintiff to remove the snow upon the terms mentioned. It was never withdrawn, and the commissioner certainly had a right to consider it an offer upon which he could base a contract with the plaintiff. It was an offer to remove the snow from such a section on the long-haul districts as might be designated by the department, and not from the whole city, as stated by the referee. It is established beyond question that the commissioner did give the order based upon this letter, and that it was considered and understood by the department that when that order was given the department was accepting the offer contained in that letter, and the work was to be done under that offer. The president of the plaintiff, who received the offer, testified that when he asked what price they were to receive he was informed that it was the contract price, 36¾ cents. This contract could certainly be no other contract than one that was proposed by the representative of the plaintiff, and which the department accepted. The plaintiff certainly cannot be absolved from its offer because the vice president of the company had failed to communicate the offer that he had made on behalf of the plaintiff to the president, when the commissioner based the order to do the work upon the offer received. The amount, therefore, that the plaintiff was entitled to recover depended upon the contract made between the plaintiff and the depart-

ment, which was based upon the offer contained in the letter of February 6, 1902, and, the department having acted upon the faith of that letter, and given an order based upon it, the plaintiff cannot repudiate the offer, and recover upon a different basis from that contained in the offer upon which the department had acted, and which it had accepted.

The referee, in his opinion, states that Cowles, the plaintiff's vice president, who wrote the letter, contradicted the evidence offered by the defendant that prior to the letter of February 6th 70 per cent. was mentioned to him as the amount of shrinkage according to the experience of the department; but on turning to Cowles' testimony it appeared that, instead of denying he expressly admits it, for Cowles testified: "I saw Mr. Clarke, I believe, a few days prior to the writing of this letter, defendant's Exhibit 1. I never had any discussion with him whatever on the question of shrinkage. I remember Mr. Clarke told me that the department would deduct 70 per cent. as a gross shrinkage in the amount of snow removed. He did not make that statement to me regarding any deduction. He said that they had made deductions in figuring it out." And the commissioner testifies that Cowles was informed before the letter was written that this deduction, 70 per cent., would be made. Under the contract which was accepted by the department the amount of shrinkage was to be determined by the commissioner. Seventy per cent. had been mentioned to the party writing the letter on behalf of the plaintiff as the probable deduction that would be made. The commissioner, under the power which was granted to him by the offer made on behalf of the plaintiff, determined that 70 per cent. was a proper deduction. The question, then, was whether there was a fair and honest determination, reasonable in itself, and which bound the plaintiff. The referee seems to have considered that the method adopted by the department would be fair in arriving at a just conclusion as affecting the entire city, as he says:

"It seems clear and reasonable that such method should be adopted in making a contract for a large area and for a specified term; but it does not seem fair or reasonable to employ a party to remove snow in a certain limited area after a single storm, and then apply that rule, without regard to actual conditions of the location and the state of the weather."

It is a little difficult to see the reasoning upon which this conclusion is based. If it would be a fair rule to adopt in applying to the whole city, I do not see why it was not a fair rule to adopt as applying to a particular order. The portions of the city cleaned by the plaintiff were a part of the most thickly settled in the city of New York, and certainly the shrinkage would be as much there as anywhere; and it seems to me that the rule that the referee adopted, basing the shrinkage solely upon the report of the weather bureau and upon the shrinkage in the snow level in a park was quite unjust to the city, where the conditions were very different, and where, by the use of the streets, the shrinkage would certainly be much greater. I do not think, therefore, that we can affirm the conclusion of the referee.

It follows that the judgment appealed from is reversed, and a new trial ordered before another referee, with costs to the appellant to abide the event. All concur.